1
2
3
4
5
6
7
8

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Michael O'Brian Watkins,<br><br>    Petitioner,<br><br>vs.<br><br>Louis Winn, Warden,<br><br>    Respondent. | No. 12-00882-TUC-DCB (BPV)<br><br>**REPORT AND RECOMMENDATION** |

Pending before the Court is a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (Petition), filed on November 20, 2012. (Doc. 1.) Petitioner, Michael O'Brian Watkins, claims his due process rights were violated when he was wrongfully convicted of a disciplinary violation that resulted in the loss of good time credits.[1]

Before the Court is the Petition (Doc. 1) and Respondent's Answer to Petition and Motion to Dismiss Petition (Doc. 10) with accompanying exhibits[2] (Doc. 9) (Answer). Petitioner filed a reply. (Doc. 17.)

Pursuant to the Rules of Practice of this Court, this matter was referred to Magistrate Judge Bernardo P. Velasco for a Report and Recommendation. (Doc. 7.)

For the reasons discussed below, the Magistrate Judge recommends that the District

---

[1] Ground Two of the Petition, a First Amendment claim, was previously dismissed by the Court. (Doc. 5.)

[2] Petitioner first filed his Answer and Motion to Dismiss with accompanying exhibits with the Court at docket 9, but refiled the Answer and Motion to Dismiss without the accompanying exhibits at docket 10 to correct a filing error. No substantive changes were made.

Court enter an order dismissing the Petition for failure to exhaust administrative remedies. Alternatively, the Magistrate Judge recommends that the District Court enter an order denying the Petition on the merits.

## I. PROCEDURAL BACKGROUND

Watkins is an inmate at the United States Penitentiary, in Tucson, Arizona (USP Tucson). *See* (Petition, at 1; Answer, Ex. A, Declaration of David T. Huband ("Huband Decl.") ¶ 3). Petitioner contends that he was denied due process of law in connection with a prison disciplinary finding that resulted in the loss of good-time credits. Watkins alleges specifically that he was denied an opportunity to present his defense, call witnesses, or present exculpatory evidence. (Pet. at 4.) Watkins is currently serving a 254-month sentence of incarceration for robbery, conspiracy to possess and brandish a firearm in furtherance of a crime of violence, and possession of a firearm in furtherance of a crime of violence and is projected to complete this sentence on March 8, 2027. (Answer, Ex. A, Huband Decl., ¶¶ 3-4.)

## II. DISCIPLINARY HEARING AND PROCEEDINGS

On August 6, 2012, at 6:30 a.m., Officer Nemcik was conducting a visual search of Watkins. (Answer, Ex. B, Att. 1 "Incident Report", ¶ 11.) Officer Nemcik reported that, during the search, Watkins "came at [him] in an aggressive manner." *Id.* Officer Nemcik "perceived that inmate Watkins was going to assault [him]" and placed him on the ground and restrained him. *Id.* Officer Nemcik wrote an Incident Report charging the petitioner with Attempted Assault on Any Person, in violation of Prohibited Act Code 224(A). *Id.* at ¶¶ 9-10.

On August 6, 2012, at 10:00 a.m., Lieutenant R. McCollum, delivered a copy of the Incident Report to the Petitioner, advised him of his right to remain silent, and conducted an investigation of the incident. *Id.* at ¶¶ 14-16, 22-24. During the investigation Watkins stated that he did not try to assault Officer Nemcik, but that Officer Nemcik did place him on the ground and applied restraints. *Id.* at ¶ 24. Lieutenant

- 2 -

McCollum reported that Watkins did not request any witnesses. *Id*. at ¶ 26. Lieutenant McCollum concluded his investigation by finding that the Incident Report was accurate as written by the reporting officer; Petitioner remained in the Special Housing Unit pending a Unit Disciplinary Committee (UDC) action. *Id*. at ¶¶ 26-27.

On August 13, 2012, Watkins was again advised of his rights. *Id*. at ¶ 23; *see also* (Answer, Ex. B, Att. 4, "Disciplinary Hearing Report (DHR)", § II). Watkins commented to the Unit Disciplinary Committee (UDC) regarding the Incident Report, that he "was naked and [the officer] threw me to the floor." *Id*. at ¶ 17. Due to the severity of the report, the UDC referred the inmate to the Disciplinary Hearing Officer (DHO) for further action, and recommended "ds [disciplinary segregation] time" and "loss [of] GTC [good time credits]." *Id*. at ¶¶19-20. Watkins requested the presence of two witnesses at the DHO hearing. *Id*. at ¶ 17.

On August 28, 2012 Vickie Petricka, the DHO, conducted a Disciplinary Hearing. (Answer, Ex. B, Att. 4, DHR.) Petitioner waived his right to request a staff representative, (*Id*. at § II "Staff Representative"); but Correctional Officer Hookland submitted a statement on his behalf:

> When inmates are placed in the holding cell they are pat searched and told to remove their shoes, belts, and any other personal items. If we believe an inmate has contraband under their clothing the officer will conduct a visual search where his clothes are removed."

*Id*. at § III "Witnesses".

Petitioner stated at the hearing that he did not attempt to assault the officer. *Id*. at § III.

In addition to the Incident Report and Investigation, the DHO considered staff memos, photographs, and medical assessments. *Id*. at § III "Documentary Evidence".

The DHO found Petitioner committed the prohibited act of Assaulting any person with less serious physical injury (Attempted), Code 224A. *Id*. § at V. "Specific Evidence". The DHO based her findings on the "reporting officer's account of the incident" and, though she considered Watkin's statement during the DHO proceedings

- 3 -

that he did not attempt to assault the officer, and further considered Officer Hookland's statements, verifying that every time Watkins went into the holding cell Watkins took his clothes off, the DHO concluded that the statement was irrelevant as a defense as staff could perceive a threat to their person regardless of whether an inmate was clothed or not.[3] *Id*. The DHO found the staff member's statements and observations credible and believable, as the statements were made strictly in the performance of his duties, and he had no reason to make up false accusations, and thus found Watkin's denial without merit. *Id*.

The DHO sanctioned Petitioner to a forfeit of 20 days good conduct time; a disallowance of 27 days good conduct time; 60 days of disciplinary segregation; loss of commissary privileges for 180 days; and a monetary fine of $100.00. *Id*. at § VI.

The DHO completed the report of the hearing on October 4, 2012, and delivered it to Petitioner via institution mail on October 6, 2012. *See* (Answer, Ex. B, Declaration of Vickie Petricka "Petricka Decl.", ¶ 12). On October 17, 2012, the Bureau of Prisons' Western Regional Office received a Request for Administrative Remedy from Watkins concerning this incident. *See* (Answer, Ex. A, Huband Decl., ¶ 15; Att. 7). The regional appeal was rejected for the reason that the issue Watkins raised was "not sensitive", and Watkins was directed to "file a request or appeal at the appropriate level via regular procedure." *Id*. at ¶ 15; (Att. 7 "Rejection Notice – Administrative Remedy"). Watkins filed no further appeal of the disciplinary action. *See id*. at ¶ 16.

## III. DISCUSSION

### A. Jurisdiction

A federal court may not entertain an action over which it has no jurisdiction.

---

[3] DHO Petricka also questioned Watkins regarding his request during the UDC hearing for two additional witnesses. Watkins stated that he wanted SIS staff A. Mendez and Lieutenant T. Palomaris present because they would verify that he always strips down when placed in the holding cell. The DHO deemed the request irrelevant for the same reasons she deemed his defense irrelevant: Staff can perceive a threat from an inmate, clothed or not. (Answer, Ex. B, Att. 4, DHR, § V.)

- 4 -

*Hernandez v. Campbell*, 204 F.3d 861, 865 (9th Cir. 2000). Writ of habeas corpus relief extends to a person in custody under the authority of the United States if the petitioner can show that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(1) & (3). A prisoner who wishes to challenge the manner, location, or conditions of a sentence's execution must bring a petition pursuant to § 2241 in the custodial court. *Hernandez,*, 204 F.3d at 864, and must file the petition in the judicial district of the petitioner's custodian. *Brown v. United States*, 610 F.2d 672, 677 (9th Cir. 1980).

In the instant case Petitioner is seeking relief with respect to disciplinary proceedings that, in part, resulted in the loss of good time credit while incarcerated at USP Tucson. Petitioner is challenging the legality of the manner in which his sentence is being executed. Thus, Ground One is properly before this Court under 28 U.S.C. § 2241.

B.    Exhaustion

There is no statutory requirement, pursuant to 28 U.S.C. § 2241, that federal prisoners must exhaust administrative remedies before filing a habeas corpus petition in court, thus it is not a jurisdictional prerequisite. *Brown v. Rison*, 895 F.2d 533, 535 (9th Cir. 1990), *overruled on other grounds by Reno v. Koray*, 515 U.S. 50, 54-55 (1995). Nevertheless, federal courts "require as a prudential matter, that habeas petitioners exhaust available judicial and administrative remedies before seeking relief under § 2241." *Castro–Cortez v. INS*, 239 F.3d 1037, 1047 (9th Cir. 2001), *abrogated on other grounds Fernandez–Vargas v. Gonzales*, 548 U.S. 30, 36 (2006). Thus, while "courts have discretion to waive the exhaustion requirement when prudentially required, this discretion is not unfettered." *Laing v. Ashcroft*, 370 F.3d 994, 998 (9th Cir. 2004). A court may waive the exhaustion requirement where administrative remedies are inadequate, futile, or pursuit of them would cause irreparable harm. *Id.* at 1000-01; *see also Fraley v. United States Bureau of Prisons*, 1 F.3d 924, 925 (9th Cir. 1993) (*per curiam*) (waiving

exhaustion where the initial request for an administrative remedy was denied based on official Bureau of Prisons (BOP) policy and further appeal would almost certainly have been denied based upon the same policy.

Accordingly, if the petitioner has not properly exhausted his claims, the district court, in its discretion, may either "excuse the faulty exhaustion and reach the merits or require the petitioner to exhaust his administrative remedies before proceeding to court," *Brown, 895 F.2d 535*, unless such remedies are no longer available, in which instance he may have procedurally defaulted on his claims, *see Francis v. Rison*, 894 F.2d 353, 354-55 & n. 2 (9th Cir. 1990) (applying procedural default rules to administrative appeals); *see generally Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Wainwright v. Sykes*, 433 U.S. 72, 86-87 (1977); *Tacho v. Martinez*, 862 F.2d 1376, 1378 (9th Cir.1988). If a prisoner is unable to obtain an administrative remedy because of his failure to appeal in a timely manner, then the petitioner has procedurally defaulted his habeas corpus claim. *See Nigro v. Sullivan*, 40 F.3d 990, 997 (9th Cir. 1994)(citing *Francis*, 894 F.2d at 354; *Martinez*, 804 F.2d at 571). If a claim is procedurally defaulted, the court may require the petitioner to demonstrate cause for the procedural default and actual prejudice from the alleged constitutional violation. *See Francis*, 894 F.2d at 355 (suggesting that the cause and prejudice test is the appropriate test); *Murray*, 477 U.S. at 492 (cause and prejudice test applied to procedural defaults on appeal); *Hughes v. Idaho State Bd. of Corrections*, 800 F.2d 905, 906-08 (9th Cir.1986) (cause and prejudice test applied to *pro se* litigants).

The BOP has established an administrative remedy process permitting an inmate to seek review of an issue relating to "any aspect of his/her own confinement." 28 C.F.R. § 542.10(a). The BOP's Administrative Remedy program requires, in most cases, that the prisoner complete informal resolution and submit an initial formal written Administrative Remedy request within "20 calendar days following the date on which the basis for the Request occurred" to the institution staff member designated to receive such Requests. 28

C.F.R.§ 14 (a)-(c).

There are some exceptions to initial filing at the petitioner's place of confinement. With respect to appeals from DHO hearings, an inmate is not required to seek informal resolution or to submit an initial request to the Warden. Instead, an inmate is to submit an appeal from a DHO hearing directly to the Regional Director, with subsequent appeal to the General Counsel, as described above. *See* 28 C.F.R. §§ 542.14(d)(2); 542.15(a). An inmate also may submit an initial request directly to the Regional Director if he or she believes the sensitive nature of the issue raised would place him or her in danger if it became known at the institution. 28 C.F.R. § 542.14(d)(1). If the Regional Office determines the matter is not sensitive, as defined in the regulations, the request will be rejected, and the inmate will be directed to resubmit the request to the institution. *Id*.

"An inmate who is not satisfied with the Regional Director's response may submit an appeal . . . to the General Counsel within 30 calendar days of the date the Regional Director signed the response." 28 U.S.C. § 542.15(a). The time limits may be extended upon a showing of a valid reason for the delay. *Id.* "Appeal to the General Counsel is the final administrative appeal." *Id.*

In this case, Watkins filed an appeal to the Regional Director on August 31, 2012, before completion of the disciplinary process. *See* (Answer, Ex. A, Att. 7). This appeal was not from the Disciplinary Hearing, which was completed on October 4, 2012 when DHO Petricka completed the DHR, but concerned the initial incident and the Incident Report which Watkins alleged he received in retaliation for expressing his intent to file a grievance. *Id*. The Regional Director rejected the appeal because it was "not sensitive", and Watkins should have filed the appeal at the appropriate level. *Id*.

BOP records demonstrate that no appeal was taken following the Disciplinary Hearing, and, despite Watkin's assertions to the contrary, BOP records demonstrate that he was capable and able to file grievances even while he remained in segregated housing.

- 7 -

*See e.g.*, (Answer, Ex. B, Huband Decl., ¶¶ 11, 16; Atts. 4-7).

The purpose of requiring inmates to file administrative remedies is to allow prison officials the opportunity to resolve problems and obviate the need for litigation. *Ruviwat v. Smith*, 701 F.2d 844,845 (9th Cir. 1983). It allows for the development of a factual record and for the agency to correct any errors, in addition to conserving court time. *Id*. Further, the administrative remedy procedure was implemented, in part, to conserve the resources of federal courts. *Id*. Petitioner did not allow the administrative remedy program an opportunity to address this issue, and he has not administratively exhausted this issue. Exhaustion is required prior to filing a lawsuit. Petitioner failed to exhaust his claims, and they are procedurally defaulted.

Petitioner has not sufficiently demonstrated that he exhausted administrative remedies or that exhaustion would be futile. Neither has Petitioner raised any grounds that would support a finding of cause and prejudice sufficient to excuse a procedural default. Allowing petitioner to bypass the exhaustion requirement on this issue would only encourage Petitioner and other prisoners to deliberately bypass the BOP's administrative remedy process.

Accordingly, Petitioner's claim should be dismissed without prejudice for failure to exhaust administrative remedies. Alternatively, the Magistrate Judge addresses the merits of the claim below.

C. <u>Merits</u>

1. *Ground One: Due Process Claim*

Federal prisoners have a statutory right to good time credits. *See* 18 U.S.C. § 3624. Accordingly, they have a due process interest in the disciplinary proceedings that may take away those credits. *Wolff v. McDonnell*, 418 U.S. 539, 556-57 (1974). "Due process in a prison disciplinary hearing is satisfied if the inmate receives written notice of the charges, and a statement of the evidence relied on by the prison officials and the reasons

- 8 -

for disciplinary action." *Zimmerlee v. Keeney*, 831 F.2d 183, 186 (9th Cir. 1987)(citing *Wolff*, 418 U.S. at 563-66.). "The inmate has a limited right to call witnesses and to present documentary evidence when permitting him to do so would not unduly threaten institutional safety and goals." *Id.* (citing *Wolff*, 418 U.S. at 566.) Once these *Wolff* procedural protections are followed, the only function of a federal court is to review the statement of evidence upon which the committee relied in making its findings to determine if the decision is supported by "some evidence." *Superintendent. Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1984) ("The requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board.").

The Court has reviewed the incident report and the DHO report and finds that the due process requirements of a prison disciplinary hearing, as established by *Wolff, supra,* were met in this case. Petitioner received notice well in advance of the hearing. He was allowed to call witnesses (Officer Hookland). The DHO determined the witness was unavailable, but, consistent with policy, considered her written statement at the hearing. *See* 28 C.F.R. § 541.8(f)(4). He declined staff representation. He received a written copy of the DHO's findings. The DHO provided the Petitioner an impartial DHO in this matter; she had neither investigated the matter, nor was she a witness or involved in any other significant manner with the incident. The Petitioner received the limited due process required by the Supreme Court in all disciplinary matters.

Watkins asserts that the disciplinary code prohibits assault, but not attempted assault. (Pet. at 4.) This claim is without merit. A Code 224 violation, "Assaulting any person" is classified as a "High Severity Level Prohibited Act" and is to be used "when less serious physical injury or contact has been *attempted* or accomplished by an inmate." *See* 28 U.S.C. § 541.3, Table 1 "High Severity Level Prohibited Acts"(emphasis added); *see also* (Answer, Ex. B, Petrick Decl. ¶ 10(discussing prison policy)). Thus, pursuant to regulation and prison policy a disciplinary code is violated by both the completed and the attempted act.

- 9 -

Watkins asserts that DHO Petricka determined he was guilty before the hearing, and without hearing his defense. (Pet. at 4.) The record does not support this claim. DHO Petricka heard and recorded Watkins' defense in her report, but found it irrelevant to the charges. She found the reporting officer to be credible, and his statement to be a basis to support the charges. Watkins submitted an "Affidavit of Complaint" (Pet. at Atts. 17- 23) in support of his allegations that DHO Petricka predetermined his guilt at his disciplinary hearing. Many of his allegations in the "Affidavit" are either irrelevant, or simply not credible. Watkins alleges that he was denied the right to present witnesses. Officer Hookland, however, provided a witness statement on his behalf. DHO Petricka also questioned Watkins regarding his request during the UDC hearing (at which time he was not allowed witnesses) for two additional witnesses. Watkins stated that he wanted SIS staff A. Mendez and Lieutenant T. Palomaris present because they would verify that he always strips down when placed in the holding cell. The DHO deemed the request irrelevant for the same reasons she deemed his defense irrelevant: Staff can perceive a threat from an inmate, whether clothed or not. (Answer, Ex. B, Att. 4, DHR, § V.) Watkins asserts in his Petition that he had several witnesses that would have submitted statements that he was generally not violent. It is not clear that he ever requested the presence of these witnesses; nonetheless, none of these witnesses were witnesses to the event in question. Watkins alleges he was not permitted to present his defense, but clearly DHO Petricka considered the statements he made in his defense during the hearing, and that he denied the charges against him. *Id.* Finally, Watkins alleges that DHO Petricka predetermined his guilt because prior to the hearing DHO Petricka asked Watkins to sign a blank "Acknowledgement of Receipt of DHO Hearing Sanctions" form. (Pet. at Atts. 20-21.) DHO Petricka explains that it is her ordinary practice, and the procedure she used in Watkin's Disciplinary Hearing, to present an inmate a blank Acknowledgment form and advise the inmate that if he is found to have committed a prohibited act, she will enter the sanctions on the form and provide a copy to him at the conclusion of the

hearing; in the event she finds that the inmate did not commit a prohibited act, she will destroy or shred the form. (Answer, Ex. B, Petricka Decl., ¶ 5) DHO Petricka explains that she has implemented this procedure because in her experience and practice as a DHO it is often difficult, after sanctions have been imposed, to convince an angry and agitated inmate to sign the Acknowledgement and the procedure is used to protect the safety of the staff members attending the hearing.[4] *Id*. The Court finds that use of this procedure does not support Watkin's allegations that DHO Petricka predetermined her findings in this case. Contrary to his allegations, DHO Petricka explains her findings and reasons therefore thoroughly in the DHR. It is evident from the report that DHO Petricka questioned Petitioner, and considered the statements and evidence submitted by the witnesses. Further, even if this procedure were flawed, it was harmless error. One Magistrate Judge recently summarized harmless error analysis as it applies in the prison disciplinary setting as follows:

> On a repeated and consistent basis, federal courts hold that in prison disciplinary cases, "[e]ven if a prison official's actions create a potential due process violation, a habeas petitioner needs to demonstrate that he was harmed by the violation in order to obtain relief." *Jordan v. Zych, No. 7:10–cv–491* (W.D.Va.2011) 2011 WL 2447937 at *4, *citing Brown v. Braxton*, 373 F.3d 501, 508 (4th Cir. 2004). *See also Powell v. Coughlin*, 953 F.2d 744, 751 (2nd Cir. 1991) ("it is entirely inappropriate to overturn the outcome of a prison disciplinary proceeding because of a procedural error without making the normal appellate assessment as to whether the error was harmless or prejudicial"); *Piggie v. Cotton*, 344 F.3d 674, 678 (7th Cir. 2003) (alleged due process violation rejected based on harmless error analysis, because prisoner failed to explain how excluded testimony would have aided his defense against disciplinary charges); *Pilgrim v. Luther*, 571 F.3d 201, 206 (2nd Cir. 2009) ("a prisoner is entitled to assistance in 'marshaling evidence and presenting a defense,' " but "any violations of this qualified right are reviewed for 'harmless error' "); *Grossman v. Bruce*,

---

[4] The Court notes that, while Petitioner's acknowledgment of receipt of the form is not at issue in this case, such a pre-signed form certainly would be of no more legal significance than a "refusal to sign" and causes concern to those involved in the disciplinary system that they are being treated fairly, and causes concern to those involved in reviewing the disciplinary process that the system is trustworthy.

- 11 -

447 F.3d 801, 805 (10th Cir. 2006) ("errors made by prison officials in denying witness testimony at official hearings are subject to harmless error review").

*Adams v. Federal Bureau of Prisons*, 2011 WL 7293381, *3 (D.Minn., December 6, 2011) Here, Petitioner has not shown that the outcome of the disciplinary proceedings would have been different if he had signed the "Acknowledgement of Receipt of DHO Hearing Sanctions" form after the Disciplinary Hearing. Thus, even if this was a procedural error during the disciplinary proceeding, Petitioner has offered no reason to believe that this error affected the outcome of the proceeding. For this reason, Petitioner cannot be granted a writ of habeas corpus based on the above due process claims.

Once these *Wolff* procedural protections are followed, the only function of a federal court is to review the statement of evidence upon which the committee relied in making its findings to determine if the decision is supported by "some evidence." *Superintendent. Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1984) ("The requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board.") In this case, the evidence relied upon by the DHO was that Petitioner "came at [the officer] in an aggressive manner," resulting in Petitioner being charged with Code 224, Assaulting any person. *See* (Answer, Ex. B, Petricka Decl., ¶ 8; Att. 4, ¶ V). The regulatory language describing a Code 224 violation explains that "a charge at this level is used when less serious physical injury or contact has been attempted or accomplished by an inmate." *See* 28 C.F.R. § 541.3, Table 1. Petitioner's aggressive move toward the officer conducting the visual search is "some evidence" that Petitioner attempted less serious physical contact. The DHO properly considered this evidence, and exercised her discretion to give it greater weight than Petitioner's statement that he did not attempt to assault anyone or his witness's statement that Petitioner would have been naked during the visual search. The DHO relied on sufficient reliable evidence to satisfy the "some evidence" test. Due process only requires that there be "some evidence" supporting the disciplinary decision. It does not require that the supporting evidence outweigh the

- 12 -

evidence to the contrary. *Hill*, 472 U.S. at 455. The petition should be denied.

## IV. RECOMMENDATION

The Magistrate Judge recommends that the District Court, after its independent review, enter an order Dismissing Ground One and the Petition in its entirety for failure to exhaust the claim.

Alternatively, the Magistrate Judge recommends that the District Court enter an order denying Ground One and the Petition on the merits.

Pursuant to 28 U.S.C. §636(b), any party may serve and file written objections within fourteen days after being served with a copy of this Report and Recommendation. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Fed.R.Civ.P. 72(b). No reply to any response shall be filed. See id. If objections are not timely filed, then the parties' rights to de novo review by the District Court may be deemed waived. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (*en banc*).

If objections are filed the parties should use the following case number: **CV 12-00882-TUC-DCB.**

Dated this 5th day of November, 2013.

_____
Bernardo P. Velasco
United States Magistrate Judge

- 13 -